## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| LANCE SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:16-cv-00373-JEO |
| | ) | |
| THE CITY OF PLEASANT GROVE | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

In this employment discrimination action, plaintiff Lance Smith, a homosexual male, alleges that he was subjected to discriminatory treatment while employed as a police officer in the Pleasant Grove Police Department and then constructively discharged. Named as defendants are the City of Pleasant Grove; the Pleasant Grove Police Department; Robert Knight ("Chief Knight"), the Pleasant Grove Chief of Police[1]; and Jennifer Fredrick ("Lt. Fredrick"), a Lieutenant in the Pleasant Grove Police Department. Before the court are three motions: a motion to dismiss by Chief Knight and Lt. Fredrick (doc. 5); a separate motion to dismiss by the City of Pleasant Grove and the Pleasant Grove Police Department (doc. 7); and a motion for leave to file an amended and restated complaint by Smith (doc. 16). Upon consideration, the court concludes that

---

[1] Robert Knight is mistakenly identified as "Roger Knight" in the complaint. (*See* Doc. 5, n.1).

Smith's motion for leave to file an amended and restated complaint is due to be granted and that the defendants' motions to dismiss are due to be granted in part and denied in part.

## I.   FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

### A.   Facts as Alleged in Smith's Original Complaint

In his original complaint, Smith alleges that he interviewed with Lt. Fredrick in 2014 for an available police officer position in the Pleasant Grove Police Department.  Lt. Fredrick indicated that Smith would be offered the police officer position and told him the salary he would be paid.  At the end of the interview, Smith informed Lt. Fredrick that he is a homosexual and has a male partner. According to Smith, Lt. Fredrick's demeanor changed at that point and she advised him to reconsider working at the department.  A few hours after the interview, however, Smith received an email from Lt. Fredrick informing him that his homosexuality would not be an issue. (Doc. 1 (Complaint) ¶¶ 17-25).

After Smith completed the required physical exam for the police officer position, Lt. Fredrick informed him that he needed to meet with Chief Knight. Smith then met with Chief Knight and Lt. Fredrick and was told by Chief Knight that he would be paid a lower salary than he had been promised by Lt. Fredrick. Smith began employment as a police officer with the Pleasant Grove Police

Department on July 8, 2014, at a yearly salary that was $5,000.00 less than he had been promised by Lt. Fredrick. (*Id.* ¶¶ 16, 26-28).

According to Smith, upon being hired he was supposed to attend a three-week field training course, but was only allowed to attend the course for less than two weeks. He was assigned to ride with Field Training Officer Andy Reid ("Officer Reid"). After Smith had ridden with Officer Reid for less than two weeks, Lt. Fredrick convened a meeting with Smith and Officer Reid and asked them whether Smith was capable of working on his own. Despite being advised by Officer Reid that Smith was not ready to work on his own due to a lack of experience, Lt. Fredrick ordered that Smith be moved to the night shift to patrol on his own. (*Id.* ¶¶ 30-42).

Smith alleges that he was informed by the night shift police sergeant that Lt. Fredrick had instructed the sergeant to write down everything Smith did wrong so Lt. Fredrick could fire him. Smith also alleges that another night shift officer warned him to be careful because a police corporal was a "homophobe." (*Id.* ¶¶ 43-46).

On September 9, 2014, Smith met with Lt. Fredrick and was told that he was "not going to work out" and needed to resign. Lt. Fredrick refused to tell Smith what he had done wrong, but did tell him that he was a good officer and would find another department that would "fit" him better. Lt. Fredrick handed Smith a

resignation letter and informed Smith that he would go back on the list of eligible officers if he signed the letter, but would be grounded, suspended, and then fired if he did not resign.  According to Smith, he resigned in the face of these "threats." (*Id.* ¶¶ 48-56).

Smith claims that Lt. Fredrick told him she would advise prospective employers and the Jefferson County Personnel Board that he resigned in good standing.  However, since resigning Smith has applied for several police officer positions through the Personnel Board without success.  Smith alleges that he has been unable to find employment because "Defendants" have falsely reported that he was an unsatisfactory employee. (*Id.* ¶¶ 60-62).

## B.    Procedural History

On December 9, 2014, Smith filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  In his EEOC Charge, Smith checked the box for discrimination based on "sex" and alleged that he was terminated from his employment with the Pleasant Grove Police Department "because of stereotypes associated with [his] sex and because of [his] gender …." (Doc. 1 at 20-21).

On December 2, 2015, the EEOC issued a Dismissal and Notice of Rights with respect to Smith's EEOC Charge. (Doc. 1 at 23-24).  Smith then filed this action on March 1, 2016.  In Count One of his complaint, Smith alleges that the

City of Pleasant Grove and the Pleasant Grove Police Department subjected him to "discriminatory terms and conditions of employment because of his sexual orientation, stereotypes associated with [his sex] and his gender," in violation of Title VII of the Civil Rights Act of 1964. (Doc. 1 ¶¶ 64-76).  In Count Two, Smith alleges that the City of Pleasant Grove, the Pleasant Grove Police Department, Chief Knight in his official capacity, and Lt. Fredrick in her official capacity deprived him of "his clearly established right to be free from gender/sexual discrimination as guarantee[d] by the Equal Protection clause of the Fourteenth Amendment to the United States Constitution. (*Id.* ¶¶ 77-89).  In Count Three, Smith alleges that "all Defendants" interfered with his "contractual or business relationship with prospective employers." (*Id.* ¶¶ 90-96).

In response to Smith's complaint, Chief Knight and Lt. Fredrick have filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 5).  They argue that all "official capacity" claims against them are due to be dismissed as redundant of Smith's claims against the City of Pleasant Grove. (*Id.* at 1-2).  They further argue that to the extent Smith contends he has sued them in their individual capacities, they have qualified immunity from his equal protection claim because he has not identified a similarly situated comparator and cannot show that their alleged conduct violated clearly established law. (*Id.* at 2-11).  Chief Knight and Lt. Fredrick also argue in a footnote that they cannot be

held liable for Smith's claim for interference with a contractual or business relationship because they are not "strangers" to the relationship Smith claims they interfered with. (*Id.* at 3, n.3).

The City of Pleasant Grove and the Pleasant Grove Police Department have also filed a motion to dismiss Smith's complaint. (Doc. 7). They first argue that all claims against the Pleasant Grove Police Department are due to be dismissed because it is not a legal entity capable of being sued. (*Id.* at 2-3). The City of Pleasant Grove then argues that Smith's Title VII claim is due to be dismissed because Title VII does not provide a remedy for alleged discrimination based solely on sexual orientation. (*Id.* at 3-8). The City argues that Smith's equal protection claim should be dismissed because Smith's factual allegations are insufficient to establish that the City had an unconstitutional policy or custom that caused his alleged injury. (*Id.* at 8-11). The City argues that Smith's tort claim for interference with a contractual or business relationship is due to be dismissed because the tort requires intentional interference and a municipality cannot be held liable for an intentional tort.[2] (*Id.* at 11-13). Finally, the City argues that Smith's

---

[2] The City also argues that Smith's claim for interference with a contractual or business relationship is due to be dismissed on the additional ground that the City cannot, as a matter of law, interfere with the employment practices of the Jefferson County Personnel Board because the City is expressly subject to the Personnel Board by statute and therefore is not a "stranger" to the Personnel Board's employment practices. (Doc. 7 at 13-16).

6

requests for injunctive relief and punitive damages are barred as a matter of law. (*Id.* at 16-18).

Smith has not responded directly to either motion to dismiss. Instead, Smith has filed a motion for leave to file an amended and restated complaint ("amended complaint"). (Doc. 16). The amended complaint is attached as an exhibit to Smith's motion. (Doc. 16-1) It is similar to Smith's original complaint, but differs in certain key respects[3]:

1.     The Pleasant Grove Police Department is not named as a defendant in the amended complaint.

2.     The amended complaint does not contain any demand for punitive damages against the City of Pleasant Grove.

3.     The amended complaint clarifies that Chief Knight and Lt. Fredrick are sued in their individual capacities for purposes of Smith's claim for intentional interference with a contractual or business relationship. (Doc. 16-1 ¶¶ 6-7). That claim is asserted against only Chief Knight and Lt. Fredrick in their individual capacities and not against the City of Pleasant Grove. (*Id.* ¶ 95).

4.     The amended complaint adds new factual allegations that "[s]exual and gender-stereotyping comments were made to [Smith],

---

[3] The following list does not include every difference between Smith's original complaint and his amended complaint.

including that 'men should be men'" and that "[o]ther officers made jokes about [Smith's] attire and his mannerisms which were related to his homosexuality and non-conformity with gender stereotypes." (*Id.* ¶¶ 30-31).

5.      The amended complaint also adds the allegation that Smith "informed Defendants that he was marrying his male partner of five years, and the association with his male partner led to his being treated differently in training and ultimately, his being constructively discharged." (*Id.* ¶ 32).

6.      In his Title VII claim, Smith adds the allegations that he was discriminated against because of his "non-conformity" with stereotypes associated with his sex and gender and because of his "personal associations, including his specific relationship and marriage to his male partner." (*Id.* ¶¶ 74-75).

7.      In his equal protection claim, Smith similarly adds the allegation that he was deprived of his right to be free from "discrimination based on non-conformity with gender stereotypes and personal associations …." (*Id.* ¶ 83).  He also adds the express allegation that the defendants acted "in accord with the policy and custom" of the City of Pleasant Grove. (*Id.* ¶ 90).

In his motion for leave to file his amended complaint, Smith asserts that the amendments to his complaint "are based on and are responsive to the issues

asserted in" the defendants' motions to dismiss and that the motions to dismiss are moot as a consequence. (Doc. 16 ¶¶ 3, 5). The defendants do not agree. In their reply in support of their motions to dismiss, the defendants assert that Smith's proposed amended complaint "fails to cure many of the legal problems" raised in their motions to dismiss and that his proposed amendments are "futile." (Doc. 18 at 1, 5-9). They thus argue that Smith's motion for leave to file his amended complaint should be denied and that his "defective claims" should all be dismissed. (*Id.* at 5, 9).

## II.   DISCUSSION

### A.   Smith's Motion for Leave to File his Amended Complaint

The court will first address Smith's motion for leave to file his amended complaint. Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that the court should "freely give leave [to amend] when justice so requires," and the Eleventh Circuit has noted that Rule 15(a) "provides the district court with extensive discretion to decide whether to grant leave to amend [even] after the time for amendment as a matter of course has passed." *Hargett v. Valley Fed. Sav. Bank*, 60 F.3d 754, 761 (11th Cir. 1995). Here, no scheduling order had been entered as of the time Smith filed his motion for leave to amend and the time for amending the pleadings had not passed. In addition, for the reasons discussed below, the court finds that Smith's proposed amendments to his complaint are not

futile.  Accordingly, the court is satisfied that Smith's motion for leave to file his amended complaint is due to be granted.

## B.    The Defendants' Motions to Dismiss

### 1.    Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a motion to dismiss an action on the ground that the allegations in the complaint fail to state a claim upon which relief can be granted.  On such a motion, the "'issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Little v. City of North Miami*, 805 F.2d 962, 965 (11th Cir. 1986) (quoting *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974)).  In considering a motion to dismiss, the court assumes the factual allegations in the complaint are true and gives the plaintiff the benefit of all reasonable factual inferences.  *Hazewood v. Foundation Financial Group, LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008) (per curiam).

Rule 12(b)(6) is read in light of Rule 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a

plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, brackets, and internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *i.e.*, its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557).

## 2. Remaining Issues

Because the court has determined that Smith's motion for leave to amend his complaint is due to be granted, certain aspects of the defendants' motions to dismiss are now moot. Through his amended complaint, Smith has effectively dismissed the Pleasant Grove Police Department as a defendant, withdrawn his demand for punitive damages from the City of Pleasant Grove, withdrawn any equal protection claim against Chief Knight and Lt. Fredrick in their individual capacities (assuming that the original complaint included any such claim), and

11

withdrawn his claim against the City of Pleasant Grove for interference with a contractual or business relationship.  To the extent that the defendants' motions to dismiss address such issues, the motions to dismiss are moot.

Other aspects of the motions to dismiss are not moot and deserve further consideration.  In particular, the defendants argue that (1) even as amended, Smith's Title VII claim against the City of Pleasant Grove is not actionable and is due to be dismissed; (2) Smith's equal protection claim against Chief Knight and Lt. Fredrick in their official capacities is still redundant of his claim against the City of Pleasant Grove and is still due to be dismissed; (3) Smith's equal protection claim against the City of Pleasant Grove is still due to be dismissed because the amended complaint adds no new factual allegations demonstrating that the City had an unconstitutional policy or custom that caused his alleged injury and because Smith has still failed to identify a similarly situated comparator; (4) Smith has set forth no new allegations refuting the argument that Chief Knight and Lt. Fredrick are not "strangers" to the City's relationship with the Jefferson County Personnel Board and cannot be liable for interfering with the Personnel Board's employment practices; and (5) Smith's requests for injunctive relief are still due to be stricken, even if he has otherwise stated a valid underlying claim in his amended complaint. (Doc. 18 at 3-9).  The court will address each argument in turn.

12

### a.     Smith's Title VII Claim

In his amended complaint, Smith alleges that the City of Pleasant Grove violated Title VII by discriminating against him based on his sexual orientation, his nonconformity with stereotypes associated with his sex and his gender, and his personal associations, specifically his relationship with and marriage to his male partner. (Doc. 16-1 ¶¶ 75-76).  The City argues that discrimination based on sexual orientation is not actionable under Title VII and that Smith's allegations of discrimination based on his "association" with his male partner and his "non-conformity" with sex and gender stereotypes are simply different ways of alleging discrimination based on sexual orientation. (Doc. 18 at 6-9).

Traditionally, courts in this circuit have held that Title VII does not provide a remedy for discrimination based on sexual orientation. As another court of this district explained:

> Title VII prohibits discrimination with respect to an employee's "compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a).  Specifically, the statute provides that it shall be unlawful for an employer:
>
> > to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin.
>
> 2 U.S.C. § 2000e–2(a)(1). Noticeably absent from the statute is any protection against discrimination on account of sexual orientation.

The Eleventh Circuit Court of Appeals has held that same-sex harassment, such as a homosexual supervisor's advances upon a same-sex employee, can be actionable under Title VII, but specifically noted: "We do not hold that discrimination because of sexual orientation is actionable." *Fredette v. BVP Mgmt. Assocs.,* 112 F.3d 1503, 1510 (11th Cir. 1997). Other circuit courts of appeal have similarly recognized that sexual orientation is not a protected class under Title VII. *See Vicker v. Fairfield Med. Ctr.,* 453 F.3d 757, 762 (6th Cir. 2006); *Medina v. Income Support Div.,* 413 F.3d 1131, 1135 (10th Cir.2005); *Rene v. MGM Grand Hotel, Inc.,* 305 F.3d 1061, 1063 (9th Cir. 2002) (*en banc*); *Bibby v. Philadelphia Coca Cola Bottling Co.,* 260 F.3d 257, 265 (3d Cir. 2001); *Simonton v. Runyon,* 232 F.3d 33, 35 (2d Cir. 2000); *Hamner v. St. Vincent Hosp. and Health Care Ctr., Inc.,* 224 F.3d 701, 707 (7th Cir. 2000); *Higgins v. New Balance Athletic Shoe, Inc.,* 194 F.3d 252, 259 (1st Cir. 1999). Courts within the Eleventh Circuit have consistently rejected Title VII claims where the complaints were based upon discrimination that arose from the plaintiff's sexual orientation or perceived sexual orientation. *See, e.g., Bostick v. CBOCS, Inc.,* 2014 WL 3809169 (M.D. Fla. Aug. 1, 2014); *Valencia v. Department of Interior,* 2008 WL 4495694 *13 (M.D. Ala. Oct. 7, 2008); *Hudson v. Norfolk So. Ry. Co.,* 209 F. Supp. 2d 1301, 1315 (N.D. Ga. 2001); *Fitzpatrick v. Winn–Dixie Montgomery, Inc.,* 153 F. Supp. 2d 1303, 1306 (M.D. Ala. 2001).

*Stevens v. Ala. Dep't of Corrections,* Case No. 1:12-cv-3782-TMP, 2015 WL 1245355, *7 (N.D. Ala. Mar. 18, 2015).   The Equal Employment Opportunity Commission, however, recently concluded that "an allegation of discrimination based on sexual orientation is necessarily an allegation of sex discrimination under Title VII."  *Baldwin v. Foxx,* EEOC Appeal No. 0120133080, 2015 WL 4397641, *5 (July 15, 2015).  At least one court in this circuit, noting that the question is "an open one," has agreed with the EEOC and has found that "claims of sexual

14

orientation-based discrimination are cognizable under Title VII." *Isaacs v. Felder Servs., LLC*, 143 F. Supp. 3d 1190, 1193 (M.D. Ala. 2015) (citing *Foxx*).

Here, regardless of whether sexual orientation discrimination is *necessarily* sex discrimination, Smith has also alleged discrimination based on his failure to conform to sex and gender stereotypes.[4]  In *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989), a plurality of the Supreme Court stated that "[i]n forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes." (internal citations and quotation marks omitted). The Eleventh Circuit has cited *Price Waterhouse* for the holding that "Title VII bar[s] not just discrimination because of biological sex, but also gender stereotyping—failing to act and appear according to expectations defined by gender." *Glenn v. Brumby*, 663 F.3d 1312, 1316 (11th Cir. 2011) (citing *Price Waterhouse*, 490 U.S. at 250-51 (plurality opinion), 258-61 (White, J., concurring), and 272-73 (O'Connor, J., concurring)).[5]   In *Brumby*, the Eleventh Circuit

---

[4] To the extent Smith also alleges discrimination based on his "association" with his male partner, the court agrees with the City of Pleasant Grove that this allegation is simply a recasting of his allegation of discrimination based on his sexual orientation.  As the City has observed, Smith's amended complaint says nothing about his partner's specific characteristics other than the fact that he is male (and, by implication, homosexual).  Without more, Smith's association with his male partner is merely reflective of his sexual orientation.

[5] Although *Brumby* involved the question "whether discriminating against someone on the basis of his or her gender non-conformity constitutes sex-based discrimination under the Equal

observed that "[a]ll persons … are protected from discrimination on the basis of gender stereotypes," noting that "courts have held that plaintiffs cannot be discriminated against for wearing jewelry that was considered too effeminate, carrying a serving tray too gracefully, or taking too active a role in child-rearing." *Id.* at 1318-19 (footnotes omitted).  *See also Isaacs*, 143 F.3d at 1194 ("To the extent that sexual orientation discrimination occurs … based on [an individual's] perceived deviations from 'heterosexually defined gender norms,' this, too, is sex discrimination, of the gender-stereotyping variety."); *Foxx*, 2015 WL 4397641, at *7 ("Sexual orientation discrimination also is sex discrimination because it necessarily involves discrimination based on gender stereotypes.").

In his amended complaint, Smith alleges that "[s]exual and gender-stereotyping comments" were made to him during his employment with the Pleasant Grove Police Department, including the comment that "men should be men," which led him to conclude that other members of the department did not feel he was "manly" enough to be a police officer. (Doc. 16-1 ¶ 30).  He also alleges that other officers made jokes about his attire and his mannerisms. (*Id.* ¶ 31). These factual allegations are "enough to raise a right to relief [under Title VII] above the speculative level."  *Twombly*, 550 U.S. at 555 (insertion added).  They are sufficient to allow the court to draw the reasonable inference that the City of

---

Protection Clause," the court cited and relied on many Title VII cases, including *Price Waterhouse.*

Pleasant Grove could be liable for discriminating against Smith because of his failure to conform to sex and gender stereotypes. Accordingly, the City of Pleasant Grove's motion to dismiss Smith's Title VII claim is due to be denied.

### b.      Smith's Equal Protection Claim

Smith's amended equal protection claim is asserted against the City of Pleasant Grove, Chief Knight in his official capacity as the Chief of Police for the City, and Lt. Fredrick in her official capacity as a Lieutenant for the City. Smith alleges that these defendants deprived him of his equal protection right to be free from "gender/sexual discrimination, discrimination based on non-conformity with gender stereotypes and [discrimination based on] personal associations ...." (Doc. 16-1 ¶¶ 83, 90). He further alleges that the defendants' actions were taken "intentionally and/or with reckless indifference to [his] clearly established rights in accord with the policy and custom of" the City. (*Id.* ¶ 90).

Chief Knight and Lt. Fredrick argue that claims against municipal officers in their official capacities are redundant of claims against the municipality itself. The court agrees. In *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991), the Eleventh Circuit noted that "[b]ecause suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly ...."

*See also Kelley v. City of Fairfield*, Case No. 2:13-cv-01012-MHH, 2015 WL 4229872, *3 (N.D. Ala. July 13, 2015) ("The Court will dismiss Mr. Kelley's official capacity claims against Chief Davis, Officer Hunter, and Officer Dudley because the Court treats suits against municipal officers in their official capacities as suits against the municipality itself. … Mr. Kelley has named the City of Fairfield as a defendant in this action, so his official capacity claims against Chief Davis and Officers Hunter and Dudley are unnecessary."). Therefore, to the extent Smith's equal protection claim is asserted against Chief Knight and Lt. Fredrick in their official capacities, the claim is due to be dismissed.

The more difficult question is whether Smith's equal protection claim against the City of Pleasant Grove is due to be dismissed as well. The statutory vehicle for bringing a claim against a municipality for an alleged constitutional violation is 42 U.S.C. § 1983. "The Supreme Court has placed strict limitations on municipal liability under § 1983." *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003). It is only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). To hold a municipality liable under § 1983, "a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom

or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). To demonstrate the existence of a policy or custom, "it is generally necessary to show a persistent and wide-spread practice." *Id.* at 1290 (internal quotation marks and citation omitted). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability against a municipality." *Craig v. Floyd County*, 643 F.3d 1306, 1310 (11th Cir. 2011) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality opinion)) (internal quotation marks omitted). Rather, "[a] pattern of similar constitutional violations … is ordinarily necessary" to impose liability. *Id.* (citing *Connick v. Thompson*, 563 U.S. 51, 62 (2011)) (internal quotation marks omitted).

Having thoroughly reviewed Smith's amended complaint, the court agrees with the City of Pleasant Grove that Smith has failed to adequately allege a claim against the City for violation of his equal protection rights. Even assuming that Smith's equal protection rights were violated, his amended complaint does not contain sufficient factual matter to allow the court to draw the reasonable inference that the City has a policy or custom that caused the violation. He has not alleged any facts evidencing a persistent and wide-spread City practice of discriminating against individuals, and violating their equal protection rights, based on their

sexual orientation, nonconformity with gender stereotypes, or personal associations.

In addition, Smith has failed to adequately allege the existence of a similarly situated comparator, an essential component of an equal protection claim. To prevail on his equal protection claim, Smith must show "a satisfactory comparator who was in fact similarly situated and yet treated differently." *Eggleston v. Bieluch*, 203 F. App'x 257, 264 (11th Cir. 2006). The comparator must be "'similarly situated in all relevant respects.'" *Id.* (quoting *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003)). Failure to show a satisfactory comparator is fatal to an equal protection claim. *See Hayden v. Coppage*, 533 F. Supp. 2d 1186, 1194-95 (M.D. Ala. 2008) (granting motion to dismiss plaintiff's equal protection claim where his amended complaint failed to show a similarly situated comparator).

Here, Smith's amended complaint contains two boilerplate references to "similarly situated employees." He alleges that he was not awarded the pay he was initially promised and was paid at a lower pay grade than "similarly situated employees were paid." (Doc. 16-1 ¶ 28). He also alleges that he was "singled out because of [his] association with his male partner … while similarly situated employees were not." (*Id.* ¶ 32). His amended complaint, however, contains no specificity regarding any of the alleged "similarly situated employees." In

particular, Smith does not identify any other officer with his level of experience who was hired at a higher pay grade, much less any other officer who was similarly situated to him in all relevant respects. He does not identify a single comparator who was allegedly treated more favorably than he was.

For these reasons, the court concludes that Smith has failed to state a claim against the City of Pleasant Grove under § 1983 for violation of his equal protection rights. Accordingly, his equal protection claim is due to be dismissed in its entirety.

### c.   Smith's Claim for Interference with a Contractual or Business Relationship

Smith's final claim, for interference with a contractual or business relationship, is asserted against Chief Knight and Lt. Fredrick in their individual capacities. Smith alleges in his amended complaint that Chief Knight and Lt. Fredrick have directly interfered with his "contractual or business relationship with prospective employers" by providing "false information to the Jefferson County Personnel Board regarding [Smith] and/or his employment as a police officer for the City of Pleasant Grove."[6]  (Doc. 16-1 ¶¶ 96, 98). He alleges that as a result of

---

[6] In his amended complaint, Smith does not identify any existing contractual or business relationship with which Chief Knight and Lt. Fredrick allegedly interfered. The crux of his claim is that they interfered with his prospective employment opportunities. Such claims are recognized in Alabama. *See Byars v. Baptist Medical Centers, Inc.*, 361 So. 2d 350 (Ala. 1978) (recognizing a justiciable claim for wrongful interference with prospective employment).

their "false statements" to the Personnel Board, he has been unable to obtain employment through the Personnel Board.  (*Id.* ¶ 97).

Chief Knight and Lt. Fredrick argue that they cannot be held liable for Smith's claim for interference with a contractual or business relationship because "they are not 'strangers' to the relationship with which [Smith] claims they interfered."  (Doc. 5 at 3, n.3).  They assert that "any communications from [them] to the Personnel Board of Jefferson County … concerning their evaluation of [Smith's] employment could only have been done as part of carrying out the City's employment relationship" with the Personnel Board.  (*Id.*)

Chief Knight and Lt. Fredrick are correct that a defendant cannot be liable for interference with a contractual or business relationship unless he or she is a "stranger" to the relationship.  *See BellSouth Mobility v. Cellulink, Inc.*, 814 So. 2d 203, 212 (Ala. 2001) ("it is essential to a claim of tortious interference with contractual relations that the plaintiff establish that the defendant is a 'third party,' i.e., a 'stranger' to the contract with which the defendant allegedly interfered" (citation and internal quotation marks omitted)); *see also Lolley v. Howell*, 504 So. 2d 253, 255 (Ala. 1987) ( "[A] party to a contract cannot, as a matter of law, be liable for tortious interference with the contract.").  They are also correct that the City of Pleasant Grove is served by the Jefferson County Personnel Board.  "For more than seventy-three years, the professional staff and employees of the public

institution known as the Personnel Board of Jefferson County, Alabama … have been governed by a three-person board, the members of which are vested by the terms of a state enabling act with the primary responsibility of promulgating rules regulating the employment and promotion of persons in the classified public service of twenty-two county and municipal governmental entities." *United States v. Jefferson County, Alabama*, Case Nos. CV-75-S-666-S, CV-74-S-17-S, and CV-74-S-12-S, 2008 WL 9391105, *1 (N.D. Ala. 2008) (footnotes omitted). "The governmental entities ('appointing authorities') served by the Personnel Board include … Pleasant Grove …." *Id.* at *1, n.2. Together, "[t]he Personnel Board and appointing authorities share responsibility for hiring and promoting employees." *Id.* None of this is disputed.

However, the fact that the Jefferson County Personnel Board and the City of Pleasant Grove share responsibility for hiring employees does not make Chief Knight and Lt. Fredrick, in their individual capacities, parties to the Personnel Board's hiring practices or parties to Smith's prospective employment relationships with other municipalities, which is what Chief Knight and Lt. Fredrick seem to be arguing here. Again, Smith has expressly alleged in his amended complaint that Chief Knight and Lt. Fredrick were acting in their individual capacities, not their official capacities, when they allegedly provided false information about him to the Jefferson County Personnel Board. In their

individual capacities, Chief Knight and Lt. Fredrick were "strangers" to any prospective employment opportunities Smith might seek through the Personnel Board. Therefore, Smith has stated a viable claim against Chief Knight and Lt. Fredrick for interference with a contractual or business relationship, at least for purposes of their motion to dismiss.

In the City of Pleasant Grove's motion to dismiss, the City argues that "a defendant does not have to be a 'party' to a contract in the strict sense for a court to find that it is not a 'stranger' to the contract or business relationship." (Doc. 7 at 15). The City cites *Waddell & Reed, Inc. v. United Investors Life Ins. Co.*, 875 So. 2d 1143, 1157 (Ala. 2003), for the following explanation:

> For the sake of clarity, we adopt the term "participant" to describe an individual or entity who is not a party, but who is essential, to the allegedly injured relationship and who cannot be described as a stranger. One cannot be guilty of interference with a contract even if one is not a party to the contract so long as one is a participant in a business relationship arising from interwoven contractual arrangements that include the contract. In such an instance, the participant is not a stranger to the business relationship and the interwoven contractual arrangements define the participant's rights and duties with respect to the other individuals or entities in the relationship. If a participant has a legitimate economic interest in and a legitimate relationship to the contract, then the participant enjoys a privilege of becoming involved without being accused of interfering with the contract.

Assuming that Chief Knight and Lt. Fredrick have adopted the City's argument on this point, the court is still satisfied that Chief Knight and Lt. Fredrick, in their individual capacities, were strangers to Smith's prospective contractual or business

relationships with other municipalities and were not "participants" in those prospective relationships. In their individual capacities, Chief Knight and Lt. Fredrick did not have a "legitimate economic interest in and a legitimate relationship to" any contract or business relationship Smith might secure through the Jefferson County Personnel Board.

### d.   Smith's Request for Injunctive Relief

In his amended Title VII claim (as well as in his original Title VII claim), Smith requests the court to grant a permanent injunction enjoining the City of Pleasant Grove and its agents from violating Title VII.[7] (Doc. 16-1 at 13-14). The City of Pleasant Grove asserts that Smith's request for injunctive relief is due to be stricken as a matter of law. (Doc. 7 at 16-17). The court agrees with the City. "It is well-established in this circuit that an injunction demanding that a party do nothing more specific than 'obey the law' is impermissible." *Elend v. Basham*, 471 F.3d 1199, 1209 (11th Cir. 2006); *see also Burton v. City of Belle Glade*, 178 F.3d 1175, 1201 (11th Cir. 1999). That is what Smith is effectively requesting here—an injunction requiring the City of Pleasant Grove to obey the law. Accordingly, his request for such injunctive relief is due to be stricken from his amended complaint.

---

[7] Smith also requests a similar injunction in his equal protection claim, but the court has determined above that his equal protection claim is due to be dismissed.

## III.   CONCLUSION

Based on the foregoing, the court concludes as follows:

1.     Smith's motion for leave to file his amended and restated complaint (doc. 16) is due to be granted.

2.     The Pleasant Grove Police Department is due to be dismissed from this action with prejudice.

3.     Chief Knight and Lt. Fredrick's motion to dismiss (doc. 5) is due to be granted as to Smith's amended equal protection claim and denied as to Smith's amended claim for interference with a contractual or business relationship.

4.     The City of Pleasant Grove's motion to dismiss (doc. 7) is due to be denied as to Smith's amended Title VII claim and granted as to his amended equal protection claim.

5.     Smith's request for an injunction enjoining the City of Pleasant Grove from violating Title VII is due to be stricken from his amended complaint.

6.     In all other respects the defendants' motions to dismiss (docs. 5 & 7) are moot.

A separate order consistent with this opinion will be entered.

**DATED** this 7th day of October, 2016.

_John E. Ott_
_____
**JOHN E. OTT**
Chief United States Magistrate Judge